STATE of Wisconsin, Plaintiff-Respondent,

v.

Jennifer WERY, Defendant-Appellant.†

Court of Appeals

*No. 2006AP1544–CR. Submitted on briefs May 9, 2007.
—Decided June 13, 2007.*

2007 WI App 169

(Also reported in 737 N.W.2d 66.)

† Petition to review denied 9/13/07.

355

On behalf of the defendant-appellant, the cause was submitted on the brief of *Elizabeth Ewald Herrick*, Merton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Jennifer Wery pled not guilty and not guilty by reason of mental disease or defect to the charge of first-degree intentional homicide. In Phase I, the criminal guilt phase of the bifurcated trial, the jury unanimously concluded that Wery was guilty of the crime. The court accepted the verdict and the case proceeded to Phase II, the criminal responsibility phase. Just after deliberations in Phase II had begun, the foreperson informed the court and the parties that one of the jurors disagreed with the guilty verdict. In the context of an ineffective assistance of counsel claim, Wery argues that her trial counsel should have objected and asked the court to order the jury to return to deliberations on Phase I, to question the juror or to declare a mistrial. We conclude that Wery's counsel did not render ineffective assistance for two reasons. First, the law governing the issue was not settled. Second, the traditional rules barring impeachment of a jury verdict after the court has accepted the verdict apply with equal force in a bifurcated trial where the issue of juror dissent does not arise until the second phase of the proceedings. We also reject Wery's request for a new trial in the interests of justice. We affirm the judgment of conviction and the order denying Wery's postconviction motion.

## FACTS

¶ 2. In January 2004, the State filed a criminal complaint against Wery charging her with first-degree

361

intentional homicide in the death of her daughter. The complaint alleged that Wery had given birth in a bathroom stall at her place of employment and then intentionally killed the baby. Wery entered a plea of not guilty and not guilty by reason of mental disease or defect. The court held a bifurcated trial. Phase I, the guilt phase, lasted two days. The jury began deliberating at 12:45 p.m. after the second day of the trial. Several hours into the deliberation process, the jury sent a note to the court asking, "How long must we make every reasonable effort to agree unanimously on the charge of first-degree intentional homicide," and a follow-up note stating, "As of this moment, we are not unanimous." At 5:45 p.m., the court issued a supplemental jury instruction and ordered the jury to return to the jury room for further deliberations. At 9:25 p.m., Wery's counsel asked the court to declare a mistrial. He argued that the jurors had been at the courthouse for twelve hours and any verdict would be the result of fatigue, frustration or a desire to go home. The court denied the motion. At 10:32 p.m., the jury returned. The court received the verdict from the jury and read it in open court. The jury found Wery guilty on the charge of first-degree intentional homicide. The jurors were individually polled and all assented to the verdict.[1]

¶ 3. Phase II, the criminal responsibility phase, began the following morning. Sometime after the jury had begun its deliberations, the court received a note from the foreperson. The attorneys, the court and the jury foreperson met in chambers to discuss the con-

---

[1] The court addressed each juror as follows: "[Juror name], was and is the verdict which the Court just read your verdict?" Every juror responded, "Yes."

tents of the note. The foreperson informed the judge that one of the jurors indicated she had "lied" the previous night in finding Wery guilty. The foreperson explained that this juror had been the lone holdout during deliberations and had taken "a lot of heat" from the other jurors, but she had ultimately agreed to join the other jurors in the guilty verdict. The foreperson stated that he did not believe that the juror had told the judge the truth the night before when asked whether she agreed with the verdict. The court told the foreperson to return to the jury room for continued deliberations. Wery's counsel offered no objection. However, the judge, the prosecutor and Wery's counsel discussed the issue and commented on the absence of well-known bright-line rules governing this type of situation.

¶ 4. The jury rendered its verdict, finding that Wery did not suffer from a mental disease or defect at the time the crime was committed. One juror, the juror who "held out" in Phase I, dissented. The court ordered that the judgment of conviction be entered.

¶ 5. Wery filed a motion claiming ineffective assistance of counsel. She argued that her trial counsel was ineffective in not objecting to a "dissenting juror." Following the *Machner*[2] hearing, the court denied Wery's motion in a written order.

¶ 6. Wery now appeals the judgment of conviction and the court's postconviction order. She contends that she was denied the effective assistance of counsel and that we should grant a new trial in the interests of justice.

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

## DISCUSSION

*Ineffective Assistance of Counsel*

¶ 7. Wery claims that her trial counsel provided ineffective assistance because he failed to object after being advised that one of the jurors did not agree with the verdict. Wery argues that had counsel objected, the trial court could have sent the jury back to resume deliberations on Phase I, declared a mistrial or questioned the juror.

¶ 8. To prove ineffective assistance of counsel, a person in a criminal case must show: (1) deficient performance by his or her lawyer and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both *Strickland* prongs if the person asserting an ineffective assistance of counsel claim fails to make a sufficient showing on either one. *Id.* at 697.

¶ 9. To prove deficient performance, the person must point to specific acts or omissions of the lawyer that are "outside the wide range of professionally competent assistance." *Id.* at 690. There is a "strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶ 10. To satisfy the prejudice aspect of *Strickland*, the person seeking relief must demonstrate that the lawyer's errors were sufficiently serious to deprive the person of a fair proceeding and a reliable outcome, *Strickland*, 466 U.S. at 687, and "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 11. Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's findings of fact regarding counsel's actions unless those findings are clearly erroneous. *Id.* at 634. Whether counsel's performance was deficient and whether counsel's actions prejudiced the defense are questions of law that we review de novo. *Id.*

¶ 12. Sections 5 and 7 of article I of the Wisconsin Constitution guarantee the right to trial by jury. *State v. Kircher*, 189 Wis. 2d 392, 399, 525 N.W.2d 788 (Ct. App. 1994). Our supreme court's decisions have assumed that this right to a trial by jury includes the right to a unanimous verdict in criminal trials. *State v. Cartagena*, 140 Wis. 2d 59, 61, 409 N.W.2d 386 (Ct. App. 1987). If the integrity of the jury trial is to be preserved, a juror with reasonable doubts about a defendant's guilt cannot agree to a guilty verdict in violation of his or her conscience and sense of right. *Id.* at 61. Consequently, a juror may dissent from a verdict, even if he or she had previously agreed to it, at any time before the verdict is received and properly recorded. *Id.*; *Kircher*, 189 Wis. 2d at 400.

¶ 13. As a corollary to the unanimous verdict, a defendant has the right to have jurors individually polled. *Cartagena*, 140 Wis. 2d at 61. Each juror must take individual responsibility and state publicly that he

or she agrees with the announced verdict. *Kircher*, 189 Wis. 2d at 399–400. If there is a dissent, or if it is stated by the juror that the assent is merely an accommodation and against the juror's conscience, it is the duty of the court, upon its own motion, to direct the jury to retire and reconsider its verdict. *State v. Wiese*, 162 Wis. 2d 507, 518, 469 N.W.2d 908 (Ct. App. 1991). However, once the court has accepted a unanimous verdict, it cannot order the jury to redeliberate. *State v. Reid*, 166 Wis. 2d 139, 144, 479 N.W.2d 572 (Ct. App. 1991). A jury's verdict is accepted once it is received in open court, the results are announced, and the jury is polled, if requested. *See State v. Knight*, 143 Wis. 2d 408, 416, 421 N.W.2d 847 (1988).

■

¶ 14. Furthermore, Wisconsin courts have consistently applied the "very ancient, and often[-]reiterated" rule "that the statements of the jurors will not be received to . . . impeach their verdict." *Olson v. Williams*, 270 Wis. 57, 70, 70 N.W.2d 10 (1955) (quoting *Butteris v. Mifflin & Linden Mining Co.*, 133 Wis. 343, 348, 113 N.W. 642 (1907)). An exception exists when the inquiry is "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." WIS. STAT. § 906.06(2) (2005–06).[3] This rule protects the defendant's right to a fair trial while at the same time promoting verdict finality and the integrity of the jury as a decision-making body. *See State v. Eison*, 194 Wis. 2d 160, 174, 533 N.W.2d 738 (1995).

---

[3] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 15. In this case, the jury announced the guilty verdict in open court. The trial court called each juror by name and asked whether the verdict was his or hers. The trial court, therefore, gave each juror an opportunity to dissent. However, all of the jurors indicated agreement with the verdict when polled. The court accepted the unanimous verdict. It was not until after the court formally accepted the verdict and the jury heard the evidence in Phase II that the juror expressed doubts about the verdict. Wery does not claim facts suggesting that extraneous information or outside influence tainted the deliberative process. A straightforward application of the traditional rules governing the impeachment of a jury to these circumstances suggests that Wery's counsel had no grounds for an objection.

¶ 16. Wery, however, contends that her counsel was ineffective because he failed to argue that these rules do not apply in a bifurcated trial where the defendant has entered pleas of not guilty and not guilty by reason of mental disease or defect. She reasons that Phase II is but a continuation of Phase I with the same jury.

¶ 17. Wery's counsel's failure to object did not constitute deficient performance. Deficient performance is limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue. *State v. McMahon*, 186 Wis. 2d 68, 85, 519 N.W.2d 621 (Ct. App. 1994). Wery's counsel was presented with a highly unusual set of facts and was without any case law providing guidance on how to handle postverdict juror dissent in a bifurcated trial. Indeed, the court and the parties acknowledged the absence of controlling law in their discussion of the issue. While it may have been ideal for her counsel to

argue that the court should question the juror, order the jury to return to deliberations or declare a mistrial, her counsel was not required to object and argue an unsettled point of law. *See id.* at 84.

¶ 18. Furthermore, Wery fails to persuade us that the traditional rules barring impeachment of a jury verdict in instances of juror remorse do not apply in a bifurcated setting. The two phases are not, as Wery posits, simply divisions of a single criminal trial; they are detached in nature and purpose. *See State v. Koput,* 142 Wis. 2d 370, 390–392, 394, 418 N.W.2d 804 (1988).

¶ 19. The first phase settles the issue of criminal guilt. *Id.* at 388–89. The State must prove the defendant committed the acts constituting a criminal offense beyond a reasonable doubt and a unanimous verdict is required. *Id.* at 390. The court proceeds to the second phase of the trial only after accepting the unanimous guilty verdict. *See id.* at 394. The second phase, the responsibility phase, is dispositional rather than criminal in nature. *Id.* at 390; *State v. Langenbach,* 2001 WI App 222, ¶ 16, 247 Wis. 2d 933, 634 N.W.2d 916. A jury verdict in this phase is valid if agreed to by at least five-sixths of the jurors. WIS. STAT. § 971.165(2); *see also Koput,* 142 Wis. 2d at 395. The bifurcation of the two phases protects both the defendant and the state from having to confront evidence, which if introduced in the guilt phase could confuse the jury or appeal to its prejudice or sympathy. *State v. Leach,* 124 Wis. 2d 648, 662, 370 N.W.2d 240. This purpose would be completely undermined, and the finality of jury verdicts called into question, if the court could receive statements of juror remorse after the court has accepted a guilty verdict

and proceeded through the evidentiary portion of the responsibility phase. Wery's ineffective assistance of counsel claim fails.[4]

*Discretionary Reversal*

¶ 20. Wery urges us to exercise our power of discretionary reversal. Wery claims that discretionary reversal is justified because the verdict was not truly unanimous, the jury was deadlocked at one point and only reached agreement after more than twelve hours at the courthouse.

¶ 21. We use our formidable power of discretionary reversal "sparingly and with great caution." *State v. Williams*, 2006 WI App 212, ¶ 36, 296 Wis. 2d 834, 723 N.W.2d 719. We have the authority to reverse a conviction in the interest of justice "if it appears from the record that the real controversy has not been fully tried," or if there has been a miscarriage of justice. WIS. STAT. § 752.35; *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797 (1990). In order to grant a discretionary reversal for a miscarriage of justice, there must be a substantial probability of a different result on retrial.

---

[4] Wery attempts to draw a favorable comparison to *State v. Cartagena*, 140 Wis. 2d 59, 409 N.W.2d 386 (Ct. App. 1987). In that case, the juror's dissent from the verdict came to light before the court had formally accepted a sealed verdict. *Id.* at 63. Following the opening and reading of the sealed verdict and a poll of the jury, the court permitted voir dire and one juror changed his mind. *Id.* at 60. We held that because the court had not yet formally accepted the verdict, the juror could dissent and the court was bound by the juror's statements. *Id.* at 62–63. In this case, however, the court did not permit voir dire and had accepted the jury's verdict by the time the juror indicated a change of heart. *Cartagena* does not control.

*See State v. Cleveland*, 2000 WI App 142, ¶ 21, 237 Wis. 2d 558, 614 N.W.2d 543.

¶ 22. Wery has not persuaded us that the real controversy, whether Wery committed the acts constituting first-degree intentional homicide, was not tried. First, the jury verdict was unanimous at the time the court formally accepted it. "[T]he verdict of a jury must be arrived at freely and fairly" and "the validity of a unanimous verdict is not dependent on what jurors agree to in the jury room, but rather upon what is unanimously reported in open court." *State v. Raye*, 2005 WI 68, ¶ 19, 281 Wis. 2d 339, 697 N.W.2d 407 (citation omitted). The court polled all twelve jurors after the verdict was read and each indicated his or her agreement before the court. Second, we are not persuaded that the verdict was the product of improper coercion or time pressures. According to the foreperson's statements to the court and attorneys, the jury had asked the court if it could wait until the next morning to deliver its verdict in Phase I and the court told it that it could. Finally, by polling the jurors, the court tested the uncoerced unanimity of the jury verdict by requiring individual responsibility and eliminated any uncertainty as to the announced verdict. *See State v. Echols*, 175 Wis. 2d 653, 668, 499 N.W.2d 631 (1993).

¶ 23. In addition, Wery fails to persuade us that a different result is likely on retrial. We have reviewed the record in this case and conclude that it does not raise grave doubts about Wery's guilt. Although the jury had difficulty reaching a unanimous guilty verdict, the fact remains that the jury did so and the court formally accepted it. It was not until after hearing evidence in Phase II concerning Wery's alleged mental illnesses, history as a victim of domestic abuse and childhood

issues that the juror vocalized her dissent from the final verdict. Wery's request for a new trial in the interests of justice is denied.

## CONCLUSION

¶ 24. Wery's ineffective assistance of counsel claim fails. The juror's dissent did not come to the court's and the parties' attention until after the court had formally accepted the guilty verdict and the evidentiary portion of the responsibility phase of the bifurcated trial had concluded. We also decline to exercise our power of discretionary reversal. Accordingly, we affirm the judgment of conviction and the order denying her postconviction motion.

*By the Court.*—Judgment and order affirmed.