PER CURIAM.
¶ 1 Ashley Baumann appeals a judgment, entered after a jury trial, convicting her of two counts of homicide by intoxicated use of a motor vehicle, contrary to WIS. STAT. § 940.09(1)(a) (2015-16),[1] one count of causing great bodily harm by intoxicated use of a motor vehicle contrary to WIS. STAT. § 940.25(1)(a), and one count of reckless driving causing great bodily harm contrary to WIS. STAT. § 346.62(4).[2] She also appeals an order denying her postconviction motion seeking a new trial, based upon claimed ineffective assistance by her trial counsel. Baumann contends her trial counsel was ineffective by: (1) both failing to object to and also introducing at trial improper vouching evidence from investigating law enforcement officers; (2) failing to object to both an expert report and expert testimony that improperly relied on a lay witness's statement; (3) failing to object to a testifying officer's inadmissible statement that Baumann was the driver of the vehicle; and (4) failing to object to evidence that victim Nicole[3] obtained money through a civil lawsuit. She also requests a new trial in the interest of justice.
¶ 2 We conclude that Baumann's trial counsel did not perform deficiently in any of the above respects. We further conclude Baumann is not entitled to a new trial in the interest of justice. Accordingly, we affirm.
BACKGROUND
¶ 3 The following facts were presented at the seven-day jury trial. On the evening of June 6, 2012, Nicole and her sister, Melissa, played a softball game and then went to the Dugout Bar in Merrill, Wisconsin. The two, along with their friends, Kelly and Baumann, drank and stayed at the Dugout until 2:00 a.m. on June 7. After the bar closed, the four women got into Baumann's car. Shortly after 3:00 a.m., residents near South Alexander and Heldt Streets in Merrill heard a loud noise. Police responded to the scene after a passerby reported seeing a vehicle rolled over off the side of the road. Melissa and Kelly were killed in the accident, and Baumann and Nicole were injured.
¶ 4 The main issue at trial was whether Baumann, or another occupant of the vehicle, was driving at the time of the accident. Nicole testified that when they left the bar, Baumann was driving the car, Melissa was in the front passenger seat, Kelly was in the rear driver's side seat, and Nicole was in the rear passenger's side seat. The four then stopped outside a friend's house in Merrill where all four got out of the car. Nicole believed they spent no more than fifteen minutes at this stop.
¶ 5 Nicole explained that when she got back into Baumann's car at the friend's house, she returned to the rear passenger's side seat and put on her seatbelt. According to Nicole, Kelly returned to the rear driver's side seat and put on her seatbelt. Baumann and Melissa returned to the front driver's and passenger's seats, respectively, but did not wear their seatbelts. Nicole testified Baumann then drove "really fast" until reaching the intersection of Mill and Heldt Streets, where she stopped at a stop sign. When Baumann stopped the car at the stop sign, Nicole got out of the car, walked around to Baumann's door, and demanded that she slow down. Nicole returned to the same seat behind Melissa and again put on her seatbelt. She testified everyone was in the same seats as earlier. The last events Nicole remembered before the crash were: the car turning left, passing a white-colored house and a bridge, and Kelly receiving a text message.
¶ 6 GPS data recovered from Kelly's phone showed that Baumann's car stopped on Mill Street less than half a mile south of the intersection with Heldt Street from 2:51 a.m. to 2:56 a.m. Photos found on Kelly's phone taken at that location show Kelly and Nicole in the backseat of the car with their seatbelts on, Melissa in the front passenger seat without her seatbelt on, and Baumann in the driver's seat.[4]
¶ 7 The crash occurred on Alexander Street shortly after 3:00 a.m. The vehicle left the road, crossed a ditch, and continued, barrel-rolling multiple times, across part of a field before stopping at the edge of a thicket.
¶ 8 One of the police officers who first responded to the scene testified that he found Nicole in a passenger seat of the vehicle. The officers found the bodies of Melissa and Kelly outside of the vehicle. After Nicole stated that she heard sounds in the thicket, the officers located Baumann, who was unconscious but breathing. Both Nicole and Baumann were transported to hospitals for medical treatment.
¶ 9 Prior to trial, Nicole made several statements regarding the women's seating positions in the vehicle. A paramedic who responded to the crash site asked Nicole, for treatment purposes, whether she had worn a seatbelt and where she was sitting in the vehicle. Nicole told the paramedic she had worn her seatbelt and had been sitting in the rear passenger's side seat. Nicole also stated that she did not know how many passengers were in the vehicle and that she had exited the vehicle after the crash to look for her sister, Melissa. The paramedic testified that Nicole was conscious and appeared coherent throughout his interaction with her.
¶ 10 Officer Paul Piskoty talked to Nicole at the hospital at about 7:00 a.m. on the morning of the accident. Piskoty testified that he asked Nicole basic questions about the accident. Nicole told him that Baumann was driving, Melissa was in the front passenger's seat, Kelly was in the back seat behind Baumann, and she was in the back seat behind Melissa. Trooper Justin Bender testified that he and Trooper Thomas Erdmann interviewed Nicole at the hospital at around 5:00 p.m. on June 7. This interview was recorded. Nicole's description of the women's positions in the vehicle was consistent with what she told Piskoty earlier that day. About two weeks after the accident, Officer Patrick Wunsch interviewed Nicole. Wunsch testified that, at that time and throughout the investigation, Nicole's statements about the women's seating positions "remained consistent."
¶ 11 Bender, a crash reconstruction specialist, testified that he and Erdmann, another crash reconstruction specialist, were called to the crash site for further investigation. Bender testified they inspected where the vehicle came to a stop after the accident. He explained the significance of the damage to the exterior of the vehicle and the locations of the occupants after they were ejected from the vehicle. He testified that they looked for blood stains and hair inside the vehicle to determine seating positions, and they collected crash data from the car's air bag control module. Bender also interviewed Baumann about the crash. Baumann told Bender she remembered leaving the Dugout and stated that the vehicle was hers but she did not know who was driving the car.
¶ 12 Erdmann testified as to the methodology he employed during the crash reconstruction investigation, including how he determined the vehicle's speed and path, and his analysis of the vehicle's air bag control module. Erdmann concluded the crash occurred due to the vehicle's high speed and an "improper steer," causing the loss of control. Based on measurements of tire marks and subsequent testing, Erdmann calculated the vehicle's speed prior to the accident was between eight-four and eighty-six miles per hour. The data from the vehicle's air bag control module reported the vehicle's top speed at the time of the accident to be ninety-six miles per hour. Erdmann also explained, based on his accident reconstruction, how the vehicle left the road, entered the ditch, became airborne, and barrel-rolled in the field.
¶ 13 Erdmann opined that the vehicle's occupants would not have been thrown from one side of the car to the other. Due to the speed of the vehicle and the way it barrel-rolled, the occupants more likely would have gone out the side windows. As to the order in which he would expect the passengers to be ejected from the vehicle, Erdmann explained that unbelted occupants on the passenger's side would be ejected first, the driver would be ejected last, and belted occupants would not be ejected at all. Erdmann expected the driver to have been ejected last because the speed of the roll would have had to slow enough to overcome the centrifugal force and pull her toward the passenger's side window, and because the steering wheel, pedals, and center console can impede the driver's immediate ejection.
¶ 14 Erdmann inspected the front seatbelts, which showed no evidence of stretching, and analyzed data from the air bag control module. That evidence indicated that neither of the front seatbelts was latched during the crash. Erdmann testified that both backseat seatbelts were "in a stretched out position so they weren't retracted in" and also had "some stretching." Therefore, Erdmann concluded the driver and front seat passenger were not wearing seatbelts and both backseat passengers were wearing seatbelts.
¶ 15 Based on the foregoing, Erdmann concluded that Melissa was in the front passenger seat unbelted, and she was ejected from the vehicle shortly after the initial impact with the ground. He concluded that despite the evidence pointing to Kelly having been belted in the back driver's side seat at the time of the collision,[5] she was ejected from the vehicle because the seatbelt was likely unlatched at some point after the initial collision but before the vehicle came to a stop. As to Nicole, Erdmann concluded she was in the rear passenger's side seat during the collision. Finally, Erdmann concluded Baumann was the driver and was unbelted during the crash. Erdmann told the jury he was giving his opinions to a reasonable degree of scientific certainty.
¶ 16 The State also presented testimony from a DNA analyst who tested hair and blood samples found in the vehicle. Several blood samples from areas in both the front and back passenger side seats, as well as samples from the driver's side of the vehicle, all matched Nicole's DNA. In addition, blood stains on the rear passenger's side seatbelt and a hair clump in the ceiling above the rear passenger side seat matched Nicole's DNA. A hair sample from the driver's side window matched Baumann's DNA. Blood samples from the back of the headrest belonging to the front passenger's seat contained a mix of DNA from at least two people-likely from both Baumann and Nicole.
¶ 17 A toxicologist testified she analyzed blood samples drawn from Baumann and Nicole at the hospital. The toxicologist explained that she calculated Baumann's blood-alcohol concentration (BAC) to have been between 0.212 and 0.294 at the time of the accident. She calculated Nicole's BAC to have been between 0.121 and 0.177.
¶ 18 The defense called Scott Rohde, then University of Wisconsin-La Crosse police chief, to testify in response to Erdmann's crash reconstruction opinion. In addition to his police chief position, Rohde operated a crash reconstruction business, and he had evaluated Erdmann's report. While Rohde testified he agreed with some of the analyses and conclusions in Erdmann's report but did not agree with others, he ultimately testified that he "could not conclude who was driving th[e] car to a reasonable degree of crash reconstruction certainty." He further opined that Erdmann's reconstruction was not thorough enough to support the report's conclusion.
¶ 19 The jury found Baumann guilty of all counts. She was sentenced to a total of seven years of initial confinement and five years of extended supervision.
¶ 20 Baumann filed a postconviction motion seeking a new trial based on the ineffective assistance of her counsel or in the interest of justice. After a Machner[6] hearing, at which Baumann's trial counsel testified, the circuit court denied her motion. The court concluded that trial counsel was not deficient on any of the four grounds Baumann raised because allowing the jury to hear the challenged evidence supported her defense strategy that the police rushed to designate her as the driver. The court also concluded Baumann failed to establish that any of the alleged deficiencies prejudiced her defense. The court further concluded Baumann's interest of justice claim failed because the real controversy was fully tried.
DISCUSSION
I. Ineffective assistance of counsel
¶ 21 Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel. State v. Balliette , 2011 WI 79, ¶ 21, 336 Wis. 2d 358, 805 N.W.2d 334 (citing Strickland v. Washington , 466 U.S. 668 (1984) ). To establish ineffective assistance of counsel, a defendant must show both that his or her counsel's performance was deficient and that the deficient performance resulted in prejudice to the defense. Id.
¶ 22 Our review of counsel's performance is highly deferential. See State v. Jenkins , 2014 WI 59, ¶ 36, 355 Wis. 2d 180, 848 N.W.2d 786. The defendant must show that the attorney's representation fell below an objective standard of reasonableness under all of the circumstances. Id. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland , 466 U.S. at 687. We will attempt to reconstruct the circumstances under which defense counsel made his or her decisions when evaluating the reasonableness of his or her conduct. Jenkins , 355 Wis. 2d 180, ¶ 36. In assessing counsel's performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland , 466 U.S. at 689. Counsel's decisions based on a reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable," and do not constitute ineffective assistance. Id. at 690-91.
¶ 23 A defendant proves prejudice by demonstrating there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Jenkins , 355 Wis. 2d 180, ¶ 37. A "reasonable probability" is a probability sufficient to undermine our confidence in the outcome. Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland , 466 U.S. at 693. If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. Id. at 697.
¶ 24 Whether a circuit court properly granted or denied relief on an ineffective assistance of counsel claim presents a mixed question of fact and law. Jenkins , 355 Wis. 2d 180, ¶ 38. We review a circuit court's findings of historical fact-including its findings of the circumstances of the case and defense counsel's conduct-using the "clearly erroneous" standard. Id. However, whether counsel's conduct constitutes ineffective assistance of counsel is a question of law, which we review de novo. Id.
A. "Vouching" statements
¶ 25 Baumann first claims her trial counsel was ineffective by failing to object to, and then later actually introducing and eliciting, improper evidence vouching for Nicole's testimony. "No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." State v. Haseltine , 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). Assessments of witness credibility are left to the jury's judgment. State v. Romero , 147 Wis. 2d 264, 278, 432 N.W.2d 899 (1988). "The Haseltine rule is intended to prevent witnesses from interfering with the jury's role as the 'lie detector in the courtroom.' " State v. Snider , 2003 WI App 172, ¶ 27, 266 Wis. 2d 830, 668 N.W.2d 784. Whether a witness has improperly vouched for the credibility of another witness is a question of law, reviewed independently on appeal. State v. Krueger , 2008 WI App 162, ¶ 7, 314 Wis. 2d 605, 762 N.W.2d 114.
¶ 26 Baumann argues her attorney was deficient in failing to object to Erdmann's testimony, during which she contends Erdmann inappropriately vouched for Nicole's story. Erdmann testified that in forming his opinions about the location of the occupants in the vehicle prior to the crash, he relied in part on witness statements, and he stated he would not form an opinion or conclusion if he was not "100 percent positive that is the correct conclusion of who was driving." Baumann argues that such testimony implicitly vouched for Nicole's testimony that Baumann was the driver. Baumann also highlights Erdmann's response to a question on cross-examination. When asked if he "relied pretty heavily on, in [his] report, on what [Nicole] told [him]," Erdmann agreed. Erdmann also testified that Nicole's statements were "very relevant to the investigation" and that he was "able to verify a lot of things that she said as true."
¶ 27 In an apparent effort to point out discrepancies in Nicole's pretrial statements to law enforcement, as part of his cross-examination of Wunsch, Baumann's trial counsel played the recorded interview of Nicole conducted by Bender and Erdmann. Baumann further argues her trial counsel performed deficiently by playing this recording, without omitting certain portions, for the jury. During the recorded interview, Erdmann told Nicole at one point, "It's very believable that you were wearing a seatbelt[ ] [b]ecause of the fact that you're here." After taking photos of Nicole's shoulder, Bender told Nicole, "having that mark up here would be very consistent with where you would have been sitting at, and looking at the vehicle it looks like somebody was sitting in the that [sic] seat for sure based on the seatbelt." Later, Bender stated, "what you do remember, you know, it does help quite a bit and everything you're saying, you know, makes sense with a lot of the stuff that was out at the scene." Baumann contends that because her theory of defense was that she was not the driver, Nicole's statements to the contrary and Nicole's credibility was "of the utmost importance." Therefore, she argues her counsel should not have played that part of the recording in which the officers vouched for Nicole's credibility.
¶ 28 Regardless of whether Erdmann's testimony and the recorded interview contained impermissible vouching,[7] we agree with the circuit court's determination that defense counsel's eliciting and failing to object to the testimony of which Baumann now complains was part of a reasonable trial strategy. See Strickland , 466 U.S. at 690-91. Baumann's defense theory was that she was not the driver, and the crash investigators rushed to judgment, did not conduct a thorough investigation and simply accepted Nicole's statements that Baumann was the driver. The recording and Erdmann's testimony supported this defense theory. Therefore, not objecting to Erdmann's trial testimony on improper vouching grounds and introducing the recording were part of a reasonable defense strategy. See Jenkins , 355 Wis. 2d 180, ¶ 36. Accordingly, we conclude that Baumann's attorney was not deficient for these reasons.
B. Expert report
¶ 29 Baumann argues her trial counsel was also deficient by failing to seek exclusion of Erdmann's expert report and testimony, which she contends improperly relied on Nicole's statement. The admission of expert testimony is within the sound discretion of the circuit court. Racine Cty. v. Oracular Milwaukee, Inc. , 2010 WI 25, ¶ 28, 323 Wis. 2d 682, 781 N.W.2d 88. The circuit court held that defense counsel was not deficient in failing to object to Erdmann's report and testimony because Erdmann's report was not based solely on what Nicole told him but also on other evidence he collected.
¶ 30 We conclude counsel was not deficient for failing to seek exclusion of Erdmann's report and testimony because the challenge would have failed. See State v. Wheat , 2002 WI App 153, ¶ 14, 256 Wis. 2d 270, 647 N.W.2d 441. WISCONSIN STAT. § 907.02(1), which codifies the Daubert[8] standard for assessing the admissibility of expert testimony, provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
¶ 31 Erdmann did not improperly rely on Nicole's account as to who was the driver. As we set forth above, Erdmann testified in depth about his extensive investigation, his methodology, and the facts and data upon which he relied. Erdmann's conclusions as to the seating arrangement of the vehicle's occupants were based on many considerations, including his training and experience, the physical evidence at the scene, and his reconstruction analysis of the crash. Nicole's statement was merely one of the many factors Erdmann took into consideration. Baumann now contends that by providing the jury with Nicole's account as to who was driving, Erdmann did not provide the jury with "scientific, technical, or specialized knowledge," as required by WIS. STAT. § 907.02(1). This argument ignores the multitude of evidence Erdmann and Bender collected and testing they completed, all of which Erdmann considered and analyzed in his expert report and during his testimony. Also, Baumann offers no binding authority holding that crash reconstruction experts may not consider witness statements in their analyses.
¶ 32 Baumann argues that her attorney testified at the Machner hearing that he had no strategic reason for not making a Daubert challenge to Erdmann's testimony. However, the circuit court observed that any motion challenging Erdmann's testimony or his report under Daubert would have failed. We therefore conclude that, had Baumann's attorney objected to Erdmann's report and testimony solely because he considered Nicole's statement as to who was driving, the objection would have been overruled.
¶ 33 In addition, this court's analysis should avoid the distorting effects of hindsight, even when that hindsight comes from counsel. See Strickland , 466 U.S. at 690-91. Here, despite counsel's testimony that he lacked a strategic reason for not making a Daubert challenge, we conclude his actual approach at trial was objectively reasonable.
¶ 34 At the Machner hearing, Baumann's attorney agreed that he had two options in approaching Erdmann's testimony: he could move to exclude his testimony, or he could hire his own expert. He testified that he chose to retain Rohde, a crash reconstruction expert, "to go through the report ... of Trooper Erdmann to find its inaccuracies and issues or problems." Finally, the record shows that Baumann's attorney spent extensive time cross-examining Erdmann, and Rohde testified at length and "focused on the faultiness and lack of thoroughness" of Erdmann's report. Counsel's decision to highlight inaccuracies in Erdmann's report and testimony, rather than seeking to exclude them, was not unreasonable under the circumstances, particularly where the defense strategy was to show a lack of thorough investigation and a rush to judgment. Strickland does not insist that "counsel confirm every aspect of the strategic basis for his or her actions." Harrington v. Richter , 562 U.S. 86, 109-10 (2011).
C. Piskoty's statement that Baumann was the driver
¶ 35 Officer Piskoty testified at trial that Merrill police directed him to go to the hospital shortly after the crash in order to obtain a blood sample from the driver. He later confirmed he drew a sample from Baumann. Baumann argues her counsel was deficient in failing to object to this statement, as Piskoty implicitly testified that Baumann was the driver. She further argues Piskoty's testimony was inadmissible under WIS. STAT. § 906.02 because he had no personal knowledge about the driver's identity.[9]
¶ 36 Trial counsel acknowledged that he did not notice when Piskoty referred to Baumann as the driver and stated, "I should have objected to that." However, he also explained that Piskoty's statement "probably helped in the concept of [law enforcement's] rush to judgment or rush to conclusion that she was the driver." Despite counsel's concession that he should have objected, he later clarified that allowing the officers to describe their investigation-including their conclusion, mere hours after the accident, that Baumann was the driver-supported Baumann's defense strategy that the State and the police jumped to that very conclusion. We therefore conclude, as did the circuit court, that not objecting to Piskoty's statement was objectively reasonable, and Baumann's attorney was not deficient in that regard. See Jenkins , 355 Wis. 2d 180, ¶ 36.
D. Evidence of a civil lawsuit
¶ 37 Finally, Baumann argues her counsel was deficient by failing to object to evidence that Nicole obtained money through a civil lawsuit for the injuries she sustained in the accident at issue in this case. Nicole testified that she hired a personal injury attorney because she did not have insurance and could not afford her medical bills, and that she paid her medical bills with money she received from the lawsuit. Baumann contends this testimony led the jury to believe that, because there was a prior lawsuit, there was a prior determination that she was at fault for the accident, which was irrelevant and unduly prejudicial under to WIS. STAT. § 904.03.
¶ 38 At the Machner hearing, the circuit court found that Nicole's testimony about the civil lawsuit did not refer to Baumann, the insurance company that was involved in the lawsuit, or how much money Nicole received. Baumann's counsel testified that he made a decision not to object to Nicole's statement because "there might [have been] some value in the jury understanding that [Nicole] received some money as a result of a bad accident." He further explained that there was no testimony regarding Baumann's insurance or any fault determination, and that "there seemed to be kind of a sympathy point there that kind of cut both ways." When asked whether he made a strategic decision not to object to the lawsuit testimony because the information could have "cut both ways," Baumann's attorney said, "That's fair."
¶ 39 We conclude that Baumann's trial counsel made a reasonable, on-the-spot decision not to object to Nicole's testimony regarding the personal injury lawsuit. He cannot be considered deficient under the circumstances. Counsel's decisions based on a reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable," and they do not constitute ineffective assistance. Strickland , 466 U.S. at 690-91. To conclude otherwise would involve improper second-guessing and scrutiny of counsel's in-the-moment decision. See Jenkins , 355 Wis. 2d 180, ¶ 36.
¶ 40 In any event, Baumann cannot demonstrate prejudice resulting from Nicole's testimony regarding the civil lawsuit. The testimony amounted to less than one page of the nearly 950 transcript pages of a seven-day trial. The information elicited from Nicole about the civil suit was vague and did not identify Baumann as the person at fault. In light of the significant evidence the State presented that Baumann was driving at the time of the accident, Baumann has not demonstrated that Nicole's testimony concerning the lawsuit so swayed the jury that it reasonably affected the outcome of the trial. See Jenkins , 355 Wis. 2d 180, ¶ 37.
II. Interest of justice
¶ 41 Baumann argues she should be granted a new trial in the interest of justice because the real controversy was not fully tried. Under WIS. STAT. § 752.35, appellate courts have a broad power of discretionary reversal if the real controversy has not been tried. Vollmer v. Luety , 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). This discretionary reversal power is "reserved for exceptional cases." State v. Jones , 2010 WI App 133, ¶ 43, 329 Wis. 2d 498, 791 N.W.2d 390 (citation omitted). We may reverse on this ground "when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried." State v. Smalley , 2007 WI App 219, ¶ 7, 305 Wis. 2d 709, 741 N.W.2d 286.
¶ 42 Baumann contends the following evidence was improperly admitted and clouded the key question of who was driving: (1) the jury was presented with evidence vouching for Nicole's version of events, clouding the crucial issue of her credibility; (2) Erdmann based his expert opinion and expert report on Nicole's statement; and (3) Piskoty testified that Baumann was the driver. Baumann's argument simply rehashes her ineffective assistance arguments. Because Baumann cannot demonstrate that any errors by her counsel in allowing the jury to hear the challenged evidence, we cannot conclude that the real controversy was not fully tried during the seven-day trial in this case. See Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. We cite to the 2015-16 version as the relevant statutes have not been amended since Baumann was charged in this case.

The jury also found Baumann guilty of two counts of homicide by use of a vehicle with a prohibited alcohol concentration and one count of injury by use of a vehicle with a prohibited alcohol concentration. Those counts were dismissed and read in at sentencing.

Pursuant to the policy underlying Wis. Stat. Rule 809.86(4), we use pseudonyms to refer to the victims in this case. Though, as the State's brief notes, Rule 809.86(4) does not apply to homicide victims, see Rule 809.86(3), we nonetheless use pseudonyms to refer to all of the victims.

The photos do not show whether Baumann was wearing her seatbelt.

An autopsy revealed Kelly was likely wearing a seatbelt because of restraint marks on her body, and there was fabric transfer from her shirt onto the rear driver's side seatbelt.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The State also contends that State v. Haseltine , 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), does not apply to out-of-court statements by police, that Erdmann's in-court statements did not constitute "vouching" testimony under Haseltine , and that Baumann failed to demonstrate prejudice. We do not address the State's additional arguments, as we conclude the decision not to object was itself a reasonable trial strategy.

Daubert v. Merrell Dow Pharms., Inc. , 509 U.S. 579 (1993).

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Wis. Stat. § 906.02.